IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RESIE K. QUALLS, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV-13-270-FHS-SPS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Resie K. Qualls requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the decision of the Commissioner should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant is engaged in substantial gainful activity, or her impairment is not medically severe, disability benefits are denied. If she does have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant can perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on May 13, 1963, and was forty-eight years old at the time of the administrative hearing (Tr. 28, 108). She completed the tenth grade and attended special education classes (Tr. 16). The claimant alleged an inability to work since December 30, 2007, due to arthritis and a hearing impairment (Tr. 123).

## Procedural History

The claimant applied for supplemental security insurance payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on March 29, 2010. Her application was denied. Following an administrative hearing, ALJ Osly F. Deramus found that the claimant was not disabled in a written opinion dated October 17, 2011 (Tr. 11-19). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the ability to perform a full range of work at all exertional levels and due to some psychologically-based factors she has some limitations but can understand, remember, and carry out simple tasks, can interact appropriately with co-workers, supervisors, and the public on an incidental work basis, and is able to adapt to a

work situation (Tr. 16). The ALJ concluded that even though the claimant had no past relevant work, she was nevertheless not disabled because there was work she could perform, *i. e.*, general laborer (Tr. 19).

## Review

The claimant contends that the ALJ erred: (i) by failing to assign proper weight to her nonsevere physical impairments in assessing her RFC, (ii) by failing to properly analyze her credibility, and (iii) by failing to fully develop the record with regard to her IQ. The undersigned Magistrate Judge finds the claimant's first contention persuasive.

Consultative Examiner Ronald Schatzman conducted a physical examination of the claimant on July 8, 2010. At the exam, she complained of arthritis for five years and hearing impairment for two years, in addition to chest pain rated a 10/10 and shortness of breath (Tr. 181-182). Dr. Schatzman found the claimant had no hearing deficit to normal conversation in the office, she had 5/5 grip strength, could perform tactile manipulation and finger to thumb opposition, knees stable in all range of motion, and a full range of motion in her back (Tr. 182-183). He assessed her with histories of arthritis, back pain, and chest pain (Tr. 183). An ontological exam and comprehensive audiometry revealed 0% hearing loss bilaterally, as all as 0% binaural hearing impairment (Tr. 190). The impression was that she had a mild high frequency sensorineural hearing loss bilaterally, but normal for speech and through the speech frequencies, and that her otoscopic examination was within normal limits bilaterally (Tr. 190).

Psychologist Robert Spray, Jr., Ph.D., conducted a psychological examination and administered the Wechsler Adult Intelligence Scale-III test. The claimant attained a verbal IQ of 58, a performance IQ of 63, and a full scale IQ of 56. Her verbal comprehension index was 59, and the perceptual organization index was 67 (Tr. 193). Dr. Spray noted that she gave limited effort, and that although the scores were in the mild mental retarded range of intelligence, he felt that even if she had given a better effort, the scores would not fall above 70 (Tr. 193). A state reviewing physician thus found that the IQ might not be a valid score and therefore the claimant appeared to be capable of simple work (Tr. 210). Additionally, the state physician found the claimant was markedly limited in the ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public (Tr. 212-213).

On October 13, 2010, the claimant reported falling and experiencing back and hip pain, reporting that her legs had given out on her (Tr. 228). On October 22, she reported continued lower mid back and hip pain, causing her increased pain, but she also reported relief after "chiro treatment" (Tr. 218). Notes indicate that she was to continue therapeutic treatment (Tr. 219).

In his written opinion, the ALJ found the claimant had the severe impairment of borderline mental functioning, as well as the non-severe impairments of arthritis, back pain, chest pain, vision problems, migraines, and hearing loss (Tr. 13). At step three, he considered whether the claimant's mental impairment met Listing 12.05, but concluded it did not because there was not a valid verbal, performance, or full scale IQ score in the

record (Tr. 15). He then summarized the claimant's hearing testimony as well as the available medical evidence. He noted that there were no records indicating the claimant was in special education classes and the claimant herself could not remember, and that she had earned a "B" in 10th Grade English before she dropped out, and she enjoyed reading her Bible, which he noted was in contrast with her testimony that she could hardly read (Tr. 17). The ALJ noted the results from the WAIS-III test, as well as Dr. Schatzman's examination finding her speech 100% intelligible along with normal thought processes and recent and remote memories (Tr. 17). He further summarized the claimant's reported activities, including going out alone and attending church, performing household chores, and talking on the phone to family every day, and found that they were inconsistent with the degree of intellectual limitation alleged (Tr. 18). He noted the claimant's report that she quit working due to leg pain (Tr. 17), but made no mention of the medical evidence related to any physical impairments at step four.

The claimant's first contention is that the ALJ's RFC does not reflect the extent of her impairments because he disregarded evidence of her mental impairment and did not accurately evaluate her physical impairments. As to her physical limitations, she argues that the ALJ failed to account for her complaints of pain related to her arthritis and low back and hip pain. Because the ALJ did find that the claimant had the severe impairment of borderline intellectual functioning, any failure to find the claimant's additional impairments severe at step two is considered harmless error because the ALJ would nevertheless be required to consider the effect of these impairments and account for them

in formulating the claimant's RFC at step four. *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."), *quoting Langley v. Barnhart,* 373 F.3d 1116, 1123-24 (10th Cir. 2004) and 20 C.F.R. § 404.1523. *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. But here the error *was not* harmless, because although the ALJ mentioned each impairment at step two the ALJ entirely failed to mention, much less consider the "cumulative effect of claimant's impairments," at step four. *Langley v. Barnhart*, 373 F.3d at 1123. *See also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider

the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") [unpublished opinion].

As to her mental impairments, the claimant acknowledges the concerns related to the validity of the IQ assessment, but argues that her deficits are at least severe enough to affect her concentration, persistence, and pace. Although it is true that a proper rejection of an IQ score as invalid is a sufficient basis for an ALJ to find that a claimant does not meet Listing 12.05C, *see Lax v. Astrue*, 489 F.3d 1080, 1087 (10th Cir. 2007), he *does* seem to rely on Dr. Spray's testing results to the extent he found she has borderline intellectual functioning. This, combined with the ALJ's failure to address the claimant's physical impairments at step four, create at least the question of whether the claimant meets a listing, *see* 20 C.F.R. pt. 404, subpt. P., app. 1, Listing 12.05C (Intellectual Disability). But in any event, because the ALJ failed to properly account for the *all* the claimant's impairments at step four, the Commissioner's decision should be reversed and the case remanded to the ALJ for further analysis. If such analysis on remand results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

**Conclusion**

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand

the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 10th day of September, 2014.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**